# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

R.C. and C.A.                                          CIVIL ACTION

VERSUS                                                 23-564-SDD-SDJ

LOUISIANA HEALTH SERVICES &
INDEMNITY COMPANY d/b/a BLUE
CROSS AND BLUE SHIELD OF
LOUISIANA, and NEW DIRECTIONS
BEHAVIORAL HEALTH, LLC.

## <u>RULING</u>

This matter is before the Court on the *Motion to Dismiss the Second Cause of Action in Plaintiffs' Amended Complaint*[1] filed by Defendants, Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA") and New Directions Behavioral Health, LLC ("New Directions") (collectively, "Defendants"). Plaintiffs, R.C. and C.A. (collectively, "Plaintiffs"), filed an *Opposition*,[2] to which Defendants filed a *Reply*.[3] For the reasons that follow, the motion will be denied.

## I.    BACKGROUND[4]

This case arises from Defendants' denial of Plaintiffs' claims for insurance benefits for the costs of medical treatment. R.C. was a participant in a fully insured employee welfare benefits plan (the "Plan") under the Employee Retirement Income Security Act of

---

[1] Rec. Doc. 29.
[2] Rec. Doc. 31.
[3] Rec. Doc. 32.
[4] The following facts are drawn from the *Amended Complaint*, (Rec. Doc. 15), and are assumed to be true for purposes of this motion. *See e.g., Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986)).

1974 ("ERISA").[5] R.C.'s stepson, C.A., was the beneficiary of the Plan.[6] BCBSLA was the claims administrator, and New Directions was BCBSLA's agent.[7]

C.A. struggled with self-esteem issues from a young age and began abusing drugs in high school.[8] C.A.'s drug abuse later escalated into other conduct including theft, sale of controlled substances, and association with "violent gangsters."[9] Due to the persistence of these issues, C.A.'s parents sought mental health treatment for C.A.[10] In February of 2021, C.A. was admitted to Elements Wilderness Program ("Elements") for medical care and treatment.[11] Elements is an "outdoor behavioral health program located in Huntington, Utah,"[12] which "provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems."[13] C.A. finished his treatment at Elements on May 5, 2021, and was admitted to Crossroads Academy ("Crossroads") the next day.[14] Crossroads is located in Ogden, Utah and, like Elements, "provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems."[15] C.A. attended the Crossroads program through September 13, 2021.[16]

Plaintiffs submitted separate claims under the Plan for coverage of the treatment C.A. received at both Elements and Crossroads.[17] Defendants denied both claims, taking

---

[5] Rec. Doc. 15, ¶¶ 3–5.
[6] *Id.* at ¶ 5.
[7] *Id.* at ¶¶ 3, 12.
[8] *Id.* at ¶¶ 18–24.
[9] *Id.*
[10] *Id.* at ¶ 25.
[11] *Id.* at ¶¶ 7, 26.
[12] *Id.* at ¶ 8.
[13] *Id.* at ¶ 9.
[14] *Id.* at ¶ 7.
[15] *Id.* at ¶¶ 10, 11.
[16] *Id.* at ¶ 7.
[17] *Id.* at ¶ 12.

the position that the treatment was not covered and/or was not medically necessary under the terms of the Plan and that certain conditions for coverage had not been satisfied.[18] Plaintiffs appealed both denials twice, but the denials were upheld.[19]

Following the denials and unsuccessful appeals, Plaintiffs filed this lawsuit asserting two causes of action.[20] The *Amended Complaint* labels the First Cause of Action as a "Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B)."[21] The Second Cause of Action is labeled as a "Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3)."[22] Defendants move to dismiss the Second Cause of Action under Rule 12(b)(6). In short, Defendants argue that the Second Cause of Action is duplicative of the First Cause of Action and that "Plaintiffs fail to plead separate and discernable injuries under section 1132(a)(3)."[23]

## II.    LAW AND ANALYSIS

### A.  Motion to Dismiss under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[24] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[25] "To

---

[18] *Id.* at ¶¶ 32, 41.
[19] *Id.* at ¶¶ 29–36, 42–53.
[20] Plaintiffs originally filed suit in the District of Utah (*see* Rec. Doc. 1). The case was transferred to this Court pursuant to a stipulated motion to change venue (*see* Rec. Docs. 16, 17).
[21] Rec. Doc. 15, p. 8.
[22] *Id.* at 10.
[23] Rec. Doc. 29-1, p. 1.
[24] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[25] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations omitted).

survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[26]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[27] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[28] However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[30] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[31] On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[32]

---

[26] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

[27] *Twombly*, 550 U.S. at 555 (2007) (internal citations and brackets omitted).

[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

[29] *Id*.

[30] *Id*.

[31] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

[32] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B.  Summary of Parties' Arguments

As noted above, Defendants seek dismissal of Plaintiffs' Second Cause of Action, arguing it is duplicative of the First Cause of Action.[33] Under the First Cause of Action in the *Amended Complaint*, Plaintiffs allege that Defendants' denial of their claims was "a violation of the terms of the Plan and its medical necessity criteria," giving rise to a claim under 29 U.S.C. § 1132(a)(1)(B).[34] In the Second Cause of Action, Plaintiffs allege that "BCBSLA places more stringent limitations on coverage for treatment in outdoor behavioral health and residential treatment settings for mental health and substance use disorders than it places on medical/surgical treatment at skilled nursing, inpatient rehabilitation, and inpatient hospice facilities."[35] Plaintiffs argue this higher level of stringency violates the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA" or the "Parity Act").[36] According to Plaintiffs, the relevant portion of MHPAEA "prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits."[37]

While Plaintiffs do not explicitly state the precise relief they seek under the First Cause of Action, they apparently seek a money judgment to compensate for C.A.'s treatment at Elements and Crossroads.[38] Under the Second Cause of Action, Plaintiffs

---

[33] Rec. Doc. 29-1, p. 1.
[34] Rec. Doc. 15, ¶¶ 57–67.
[35] *Id.* at ¶ 87.
[36] *Id.* at ¶ 88.
[37] *Id.* at ¶ 70 (citing 29 U.S.C.§1185a(a)(3)(A)(ii)).
[38] *See Id.* at p. 15.

specify that they seek "appropriate equitable remedies as provided under 29 U.S.C.

§1132(a)(3) including, but not limited to:

> (a) A declaration that the actions of the Defendants violate MHPAEA;

> (b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

> (c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

> (d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

> (e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

> (f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

> (g) An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

> (h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA."[39]

Defendants contend the Second Cause of Action is duplicative of the first because

"the thrust of the Second Cause of Action is to recover benefits allegedly owed to Plaintiffs

by forcing the 'Defendants' to disgorge funds they failed to pay out as benefits, to account

for the funds withheld, to 'provide payment to the Plaintiffs as make whole relief,' and to

provide 'restitution . . . to the Plaintiffs for their loss.'"[40] In other words, Defendants argue

that the "essence" of Plaintiffs' lawsuit "demands recovery of plan benefits allegedly due,"

---

[39] *Id.* at ¶ 91.
[40] Rec. Doc. 29-1, p. 4.

and that the Second Cause of Action merely "outlines several equitable theories to reach the same result – recovery of benefits."[41] Defendants argue that because Section 1132(a)(1)(B) provides Plaintiffs an "adequate remedy," the Second Cause of Action under Section 1132(a)(3) must be dismissed as duplicative.[42]

In opposition, Plaintiffs argue their claims are not duplicative because "ERISA and MHPAEA address different injuries and protect different interests."[43] Plaintiffs contend that their MHPAEA claim "is an alternative, rather than duplicative, cause of action."[44] Plaintiffs explain:

> In contrast to the relief sought under Plaintiffs' (a)(1)(B) and statutory penalties claims, the equitable relief Plaintiffs seek in their MHPAEA cause of action is directed at addressing violations of the Parity Act to ensure individuals will have access to coverage for mental health and substance use disorder treatment in the way Congress intended when it originally passed MHPAEA in 2008 and amended that statute as recently as 2020.[45]

Plaintiffs further contend that, contrary to Defendants' arguments, recovery of benefits owed under Section 1132(a)(1)(B) does not provide an adequate remedy in this case.[46] In sum, Plaintiffs maintain that the Second Cause of Action sets forth "a distinct injury with a distinct remedy."[47] For example, Plaintiffs focus specifically on the contract reformation remedy sought under the Second Cause of Action, arguing that "[r]eformation of discriminatory plan terms is not relief that can be afforded under any portion of §1132 other than §1132(a)(3) via a Parity Act claim."[48] Additionally, Plaintiffs contend it would be

---

[41] *Id.* at 6.
[42] *Id.* at 7–10.
[43] Rec. Doc. 31, p. 4.
[44] *Id.* at 4.
[45] *Id.*
[46] *Id.* at 5.
[47] *Id.* at 7.
[48] *Id.* at 11.

inappropriate to deem the Second Cause of Action duplicative at this time because "at the motion to dismiss stage the Court lacks substantial evidence to evaluate these potential remedies and it would be premature to determine whether Plaintiffs' (a)(1)(B) claim would provide adequate relief."[49]

### C. Analysis of Applicable Law

#### i.  ERISA and MHPAEA

ERISA's civil enforcement provisions are found in Section 502(a) of the statute (codified at 29 U.S.C. § 1132(a)). Section 502(a)(1)(B) of ERISA (implicated under Plaintiffs' First Cause of Action) allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Additionally, Section 502(a)(3) (implicated under Plaintiffs' Second Cause of Action) provides for a civil action "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

MHPAEA (or "the Parity Act"), an amendment to ERISA, is codified at 29 U.S.C. § 1185a. The Parity Act provides that an insurance plan "that provides both medical and surgical benefits and mental health or substance use disorder benefits" cannot impose stricter coverage limitations on the mental health or substance use disorder coverage than it imposes on the medical and surgical coverage.[50] In other words, the Parity Act essentially "prohibits discrimination in the provision of insurance coverage for mental

---

[49] *Id.* at 8.
[50] 29 U.S.C. § 1185a(a)(3)(A).

health conditions as compared to coverage for medical and surgical conditions in employer-sponsored group health plans."[51] Specifically, the applicable provision of the Parity Act requires that

> the treatment limitations applicable to such mental health or substance use disorder benefits are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.[52]

Although the Parity Act does not itself create a private right of action, courts recognize that it "may be enforced using the civil enforcement provisions in ERISA Section [502]."[53]

### ii.    Plaintiffs' Simultaneous ERISA Claims

Several courts have addressed the ability of a plaintiff to bring simultaneous claims under Section 502(a)(1)(B) and Section 502(a)(3), but the decisions are not uniform and vary with context. In *Varity Corporation v. Howe*,[54] the Supreme Court discussed the relationship between claims brought under these provisions. The Court described Section 502(a)(1)(B) as addressing "wrongful denial of benefits and information," whereas Section 502(a)(3) is a "catchall" provision which acts "as a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."[55] This distinction was drawn to avoid the concern that a claimant may

---

[51] *C.C. v. Baylor Scott & White Health*, 502 F. Supp. 3d 1146, 1150 (E.D. Tex. 2020) (citing *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016)).
[52] 29 U.S.C. § 1185a(a)(3)(A)(ii).
[53] *C.C. v. Baylor Scott & White Health*, 502 F. Supp. 3d at 1150. *See also, e.g., Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1259 n. 118 (D. Utah 2016) ("Congress enacted the Parity Act as an amendment to ERISA, making it enforceable through a cause of action under 29 U.S.C. § 1132(a)(3) as a violation of a 'provision of this subchapter.'").
[54] 516 U.S. 489 (1996).
[55] *Id.* at 512.

"repackage his or her 'denial of benefits' claim as a claim for 'breach of fiduciary duty,'" and that "lawyers will complicate ordinary benefit claims by dressing them up in 'fiduciary duty' clothing."[56] The Court was concerned that by repackaging claims and bringing actions under Section 502(a)(3) instead of Section 502(a)(1)(B), a plaintiff could avoid the "arbitrary and capricious" standard of review applicable to denial of benefits claims and instead enjoy the less deferential "rigid level of conduct" standard applicable to fiduciaries.[57] The Court stated the following regarding the interplay between the two provisions: "we should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"[58]

Defendants argue that the reasoning in *Varity* requires dismissal of Plaintiffs' Second Cause of Action. Defendants also find support in the Fifth Circuit's decision in *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*[59] In *Innova Hosp.*, the plaintiff asserted claims pursuant to Section 502(a)(1)(B) for denial of benefits and claims pursuant to Section 502(a)(3) for breach of fiduciary duty. In short, the plaintiff alleged that the defendant, its insurer, "failed to pay at all under various health-insurance plans or reduced the payment significantly."[60] Under its Section 502(a)(3) claim, the plaintiff sought "equitable relief by way of surcharge."[61] The court noted that "a 'surcharge'—a type of monetary remedy against a trustee—is a potential § 1132(a)(3) remedy under our precedent."[62] Although a surcharge only entails monetary relief, it is

---

[56] *Id.* at 513–514.
[57] *Id.*
[58] *Id.* at 515.
[59] 892 F.3d 719 (5th Cir. 2018).
[60] *Id.* at 724.
[61] *Id.* at 733.
[62] *Id.*

still considered within "the category of traditionally equitable relief."[63] However, the court noted that in analyzing whether the recovery of benefits under Section 502a(1)(B) provides "adequate relief," it "'must focus on the substance of the relief sought and the allegations pleaded, not on the label used.'"[64] The Fifth Circuit upheld the district court's dismissal of the Section 502(a)(3) claims, finding that the plaintiff's requests for a surcharge were "essentially claims for benefits denied."[65] Importantly, the court found that the fiduciary duty claims under Section 502a(3) were "indistinguishable" from the Section 502a(1)(B) claim for recovery of benefits, and that the "essence" of the plaintiff's case was that the insurer failed to reimburse under the terms of the plans.[66] In other words, although the plaintiff sought relief through both payment of benefits and assessment of a "surcharge," the underlying injury was the same: the insurer failed to adequately pay benefits. For this reason, the plaintiff had an adequate mechanism for redress under Section 502(a)(1)(B) and therefore could not simultaneously plead the claim under Section 502(a)(3).[67]

Thus, *Varity* and *Innova Hosp.* indicate that a breach of fiduciary duty claim under Section 502(a)(3) is unavailable in some circumstances if the plaintiff has an "adequate remedy" under Section 502(a)(1)(B). Defendants argue *Varity* and *Innova Hosp.* compel dismissal of the Second Cause of Action here because the underlying injury is the same: "the 'essence' of this Complaint demands recovery of plan benefits allegedly due."[68] Thus, Defendants say that the First Cause of Action under Section 502(a)(1)(B) provides

---

[63] *Id.* (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011)).
[64] *Id.* (quoting *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013)).
[65] *Id.*
[66] *Id.*
[67] *Id.* at 733–734.
[68] Rec. Doc. 29-1, p. 6.

Plaintiffs with an adequate remedy, and the Second Cause of Action under Section 502(a)(3) is therefore barred.

Plaintiffs counter that Defendants mischaracterize their Second Cause of Action:

> Defendants seek to impose a reading of Plaintiffs' Complaint on the court that the Parity Act claim is merely a breach of fiduciary duty claim, and that the "thrust" of this claim is "to recover benefits." This could not be further from the truth. The thrust of Plaintiffs' MHPAEA claim is an effort to make Defendants to comply with that law.[69]

Plaintiffs add: "The ongoing right to have claims evaluated in compliance with the Parity Act is distinct from Plaintiffs' singular claim for benefits, and has an ongoing effect on the administration of the Plan."[70]

In *Innova Hosp.*, the plaintiff sought only monetary relief in both its Section 502(a)(1)(B) claim (recovery of benefits) and its Section 502(a)(3) claim (surcharge), which contributed to the Fifth Circuit's finding that the claims were "indistinguishable."[71] Notably, the court in *Innova Hosp.* did not address the situation presented in this case, where Plaintiffs' Section 502(a)(3) claim includes requests for non-monetary equitable relief for alleged violations of the Parity Act. Here, unlike Plaintiffs' Section 502(a)(1)(B) claim, the Section 502(a)(3) claim seeks equitable remedies including reformation, estoppel, and injunctions, which are distinct from a monetary claim for recovery of benefits. Moreover, unlike in *Innova Hosp.*, Plaintiffs here allege separate injuries: denial of benefits on the one hand, and being subject to a plan that violates the Parity Act on the other hand. In this respect, the Court finds that Plaintiffs' claims in the Second Cause of

---

[69] Rec. Doc. 31, p. 9.
[70] *Id.* at 10.
[71] *Innova Hosp.*, 892 F.3d at 732–743.

Action are distinguishable from the claim for recovery of benefits in the First Cause of Action.

Plaintiffs cite another Supreme Court case, *CIGNA Corp. v. Amara*,[72] to further support their argument that the two causes of action are distinct. In *Amara*, the district court granted the plaintiffs' requested relief of having the terms of a plan reformed under Section 502(a)(1)(B). The Supreme Court reversed, finding that Section 502(a)(1)(B) does not authorize reformation of plan terms as a remedy: "The statutory language speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them."[73] However, the Court also found that nearby Section 502(a)(3) does provide for reformation of plan terms, as well as other avenues of relief that are "traditionally considered equitable remedies,"[74] such as injunctions, estoppel, and restitution.[75] The Supreme Court remanded the case for the district court to examine the reformation claim under Section 502(a)(3).[76] Plaintiffs in this case argue that, "[f]unctionally, *Amara* permitted the plaintiffs to pursue claims under both (a)(1)(B) and (a)(3), and after considering the merits of the plaintiffs' (a)(1)(B) claim, permitted the lower court to examine whether equitable relief under (a)(3) was appropriate."[77]

In the Court's view, *Varity*, *Amara*, and *Innova Hosp.* read together do not support a blanket rule prohibiting a plaintiff's ability to plead claims under both Section 502(a)(1)(B) and Section 502(a)(3) simultaneously. Instead, the Court agrees with the following interpretation of this issue by the District of Utah:

---

[72] 563 U.S. 421 (2011).
[73] *Id.* at 436 (quoting 29 U.S.C. § 1132(a)(1)(B)) (emphasis in original).
[74] *Id.* at 440.
[75] *Id.* at 439–442.
[76] *Id.* at 445.
[77] Rec. Doc. 31, p. 6.

The court understands the core lesson of *Varity* and *Amara* to be that if the plaintiff may obtain an adequate, make-whole remedy for her injury by pursuing a claim for monetary relief under Section 502(a)(1)(B), she may not also seek additional equitable relief under Section 502(a)(3) for the same injury. Rather than establishing a categorical bar, this rule prompts two antecedent and related questions: (1) Has the plaintiff alleged alternative theories of liability or suffered distinct injuries to justify pursuing simultaneous causes of action under both Section 502(a)(1)(B) and Section 502(a)(3)? (2) Do the monetary damages available for causes of action under Section 502(a)(1)(B) provide "adequate relief" such that the prevailing plaintiff can be made whole and completely remedy her injury or injuries without resorting to equitable relief? In other words, the proper inquiry is whether the plaintiff's simultaneous ERISA claims are actually duplicative, meaning they seek to remedy the same injury with "repackaged" causes of action. If they are duplicative, *Varity* dictates that the plaintiff must pursue her claims under Section 502(a)(1)(B). The court must also determine if the plaintiff's injury or injuries are adequately remedied by her Section 502(a)(1)(B) cause of action. If the plaintiff's injury or injuries are adequately remedied by an award of money damages under Section 502(a)(1)(B), then she may not also recover equitable relief under Section 502(a)(3).[78]

The Court will address these two inquiries in turn.

### Alternative Theories or Distinct Injuries

The Court finds that Plaintiffs' First and Second Causes of Action are not duplicative. Nothing in *Varity* prohibited pleading both of these claims; as the Eighth Circuit has stated, "*Varity* does not limit the number of ways a party can initially seek relief at the motion to dismiss stage."[79] As noted above, the *Varity* Court expressed concern that by using Section 502(a)(3), "lawyers will complicate ordinary benefit claims by dressing them up in 'fiduciary duty' clothing."[80] However, that concern is not implicated in

---

[78] *Christine S. v. Blue Cross Blue Shield of N.M.*, 428 F. Supp. 3d 1209, 1226–1227 (D. Utah 2019).
[79] *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014).
[80] *Varity*, 516 U.S. at 513–514.

this case. Plaintiffs' Second Cause of Action does not repackage an ordinary benefits claim; instead, Plaintiffs assert their rights under the Parity Act, which requires that treatment limitations applicable to mental health and substance use disorder benefits be "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan."[81] Thus, the "repackaging" concern in *Varity* does not apply because "Plaintiffs may enforce their Parity Act rights only through Section 502(a)(3) and have no ability to duplicate these claims under a Section 502(a)(1)(B) cause of action."[82] Therefore, the Parity Act claim is not an "ordinary benefit claim" in disguise, and it is not duplicative of the claim for recovery of benefits.

In *Innova Hosp.*, the court quoted the Fourth Circuit to explain that "the great majority of circuit courts have interpreted *Varity* to hold that a claimant whose *injury* creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3)."[83] Interpreting this notion in a later case, the Fifth Circuit clarified that a Section 502(a)(3) claim is not necessarily duplicative if it presents a different injury: "*By looking at the underlying alleged injury*, it is possible to determine whether a given claim is duplicative of a claim that could have been brought under ERISA § 502(a)(1)(B)."[84] The Sixth Circuit has likewise recognized that the simultaneous pleading of claims under Section 502(a)(1)(B) and Section 502 (a)(3) is permissible "where the breach of fiduciary duty claim is based on an *injury* separate and distinct from the denial of benefits or where

---

[81] 29 U.S.C.A. § 1185a(a)(3)(A)(ii).
[82] *Christine S.*, 428 F. Supp. 3d at 1229.
[83] *Innova Hosp.*, 892 F.3d at 733 (quoting *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006)) (emphasis added).
[84] *Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 865 (5th Cir. 2018) (emphasis added).

the remedy afforded by Congress under § 502(a)(1)(B) is otherwise shown to be inadequate."[85]

Here, the Parity Act claim alleges an injury distinct from that of the claim for denial of benefits. The Court disagrees with Defendants' assertion that the essence of Plaintiffs' whole lawsuit is merely a demand for recovery of benefits. While the First Cause of Action does seek payment of benefits, the Second Cause of Action is different. As Plaintiffs explain, under their Second Cause of Action,

> Plaintiffs seek a remedy forcing Defendants to evaluate coverage of mental health and substance use disorder care at parity with analogous medical/surgical claims. Plaintiffs also continue to be beneficiaries of the Plan at issue, and may in the future seek benefits under this Plan. They have a distinct right to have their claims, present and future, evaluated by a plan compliant with MHPAEA. … An analysis of whether a claim has been incorrectly denied under ERISA plan terms is, by definition, different from an analysis of whether a claims administrator has violated MHPAEA. [86]

In the *Amended Complaint*, Plaintiffs make specific allegations that the "program and facility eligibility criteria" and the "medical necessity criteria" that BCBSLA applies to mental health treatment "are more stringent or restrictive" than the criteria applied to "analogous intermediate levels of medical or surgical benefits."[87]

Thus, the causes of action seek to remedy separate injuries: the wrongful denial of benefits under the First Cause of Action and "the present *and future* injury precipitated by the Defendants' failure to administer the Plan in compliance with the Parity Act, upon

---

[85] *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015) (citing *Gore v. El Paso Energy Corp. Long Term Disability Plan,* 477 F.3d 833, 840–42 (6th Cir. 2007)) (emphasis in original).
[86] Rec. Doc. 31, pp. 9–10.
[87] Rec. Doc. 15, ¶¶ 72, 73.

which the Plaintiffs seek to redress [their] loss flowing from the Defendants' failure and prevent [Defendants'] … future violations,"[88] under the Second Cause of Action.

Defendants argue that "Plaintiffs recognize that the Plan as currently written would provide coverage for Plaintiffs' treatment at Elements and Crossroads, and therefore, if Plaintiffs prevail in this case (they should not), this Court could award benefits under the Plan with no need to reform its terms."[89] But this argument implies that the award of benefits is the only injury Plaintiffs seek to remedy. On the contrary, Plaintiffs specifically allege violations of the Parity Act in the Second Cause of Action. The injury caused by the violation of the Parity Act does not merely entail the past failure to pay benefits; rather, it includes Plaintiffs' continual subjection to the non-compliant Plan which allegedly limits mental health benefits more restrictively than other medical benefits. And the mere payment of past benefits cannot remedy the present and future injuries caused by the alleged Parity Act violation; only the equitable relief (e.g., reformation, injunctions, and disgorgement of funds related to the alleged violation of the Parity Act) can address those injuries.[90] Therefore, the possibility that benefits could be awarded under the terms of the Plan without reformation does not render Plaintiffs' Second Cause of Action duplicative.

Moreover, Plaintiffs argue that Defendants' position would "forc[e] Plaintiffs to elect a remedy at the motion to dismiss stage" and "would preclude any MHPAEA claim brought

---

[88] *Christine S.*, 428 F. Supp. 3d at 1230 (internal quotations and citation omitted) (emphasis added).

[89] Rec. Doc. 32, p. 5.

[90] *See Christine S.* (428 F. Supp. 3d at 1231) ("This second injury is distinct from the alleged wrongful denial of benefits because Plaintiffs contend they were also deprived of their statutory entitlement to an insurance plan that complies with the Parity Act, even if a compliant plan would nonetheless still result in a denial of benefits for T.A.'s treatment at Elevations and Cherry Gulch. Accordingly, Plaintiffs' Section 502(a)(3) claim seeks to rectify past injury and prevent future recurrence by obtaining, among other relief, an injunction, surcharge, and disgorgement remedies related to the Defendants' financial benefit obtained from violating the Parity Act."). *See also New York State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.,* 798 F.3d 125, 135 (2d Cir. 2015) (characterizing injunctive relief under the Parity Act as prohibiting future violations).

by a participant or beneficiary when benefits have been denied."[91] This point is well-taken; adopting a rule that outright prohibits simultaneously pleading Section 502(a)(1)(B) claims and MHPAEA claims under Section 502(a)(3) would "effectively negat[e] the Parity Act in every case where the plaintiff also plausibly alleges that they were wrongfully denied benefits."[92] Such a rule would also be at odds with the Federal Rules of Civil Procedure, which allow the pleading of alternative or different theories of liability.[93] Further, as the Eighth Circuit plainly stated in *Silva v. Metropolitan Life Ins. Co.*, "*Varity* only bars duplicate recovery and does not address pleading alternate theories of liability."[94]

In short, the denial of benefits claim and the MHPAEA claim address two separate injuries, "and providing a remedy for one does not resolve the other."[95] Therefore, the claims are not duplicative.

## Whether Monetary Damages under Section 1132(a)(1)(B) Provide "Adequate Relief"

As noted above, the Supreme Court stated in *Varity* that "where Congress elsewhere provided *adequate relief* for a beneficiary's injury, there will *likely* be no need for further equitable relief, in which case such relief *normally* would not be 'appropriate.'"[96] Defendants cite *Varity* for the broader proposition that "Section 1132(a)(3) offers only equitable relief should there be no relief found elsewhere in the statute."[97] In the Court's

---

[91] Rec. Doc. 31, p. 10.
[92] *Christine S.*, 428 F. Supp. 3d at 1234.
[93] *See* Fed. R. Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain ... a demand for the relief sought, which may include relief in the alternative or different types of relief."); Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); *see also* Fed. R. Civ. P. 18 ("A party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party.").
[94] *Silva,* 762 F.3d at 727 (8th Cir. 2014). *See also Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 89 (2d Cir.2001) ("*Varity Corp.* did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available.").
[95] *Christine S.*, 428 F. Supp. 3d at 1231.
[96] *Varity,* 516 U.S. at 515 (emphasis added).
[97] Rec. Doc. 29-1, p. 5.

view, this is an overstatement. *Varity* only suggested that further equitable relief would ("likely") be unnecessary when other sections of the statute provided "*adequate* relief."[98] This does not necessarily mean, as Defendants suggest, that a claim under Section 502(a)(3) is only available in cases where a Section 502(a)(1)(B) claim is completely unavailable, particularly when the claims seek to address different injuries.[99] In other words, recovery under those two subsections is not necessarily mutually exclusive if the monetary relief under Section 502(a)(1)(B) is not an "adequate remedy" for the injuries alleged.

In *Bennett v. Louisiana Health Serv. & Indem Co.*, this Court adopted the following approach articulated by the Southern District of New York: "if 'it is not clear' at the pleading stage whether 'monetary benefits under § 502(a)(1)(B) alone will provide [the plaintiff] a sufficient remedy,' a district court should not dismiss a Section 502(a)(3) claim as duplicative on a motion to dismiss."[100] Thus, as this Court elaborated in *Bennett*:

> This Court agrees with the more expansive approach taken by many courts, which allows plaintiffs, at this stage of litigation, to simultaneously plead claims under several subsections of Section 502(a). This rule allows Plaintiffs time for discovery, to develop their trial strategy, and to preserve alternative grounds for relief until a later stage in the litigation. Indeed, in the event that Plaintiffs' 502(a)(1)(B) claims prove not to be viable, they should be permitted to rely on their 502(a)(2)&(3) claims as a "safety net, offering appropriate equitable relief for injuries caused by violations that Section 502 does not elsewhere adequately remedy." The Court finds that it is premature to dismiss Plaintiffs' 502(a)(2)&(3) claims at this early stage of the litigation, based on Plaintiffs' original *Complaint*, without the benefit of some discovery, and based

---

[98] *Varity*, 516 U.S. at 515 (emphasis added).

[99] *See Devlin*, 274 F.3d at 89 ("The Supreme Court in *Varity Corp.* did not eliminate the possibility of a plaintiff successfully asserting a claim under both § 502(a)(1)(B), to enforce the terms of a plan, and § 502(a)(3) for breach of fiduciary duty.").

[100] 450 F. Supp. 3d 686, 698–699 (M.D. La. 2020) (quoting *Mohr-Lercara v. Oxford Health Ins., Inc.*, No. 18 CV 1427 (VB), 2019 WL 1409479, at *9 (S.D.N.Y. Mar. 28, 2019) (quoting, in turn, *New York State Psychiatric Ass'n, Inc.*, 798 F.3d at 134).

on this Court's finding that Plaintiffs have sufficiently plead a claim under Section 502(a)(1)(B).[101]

Accordingly, the Court finds that it is premature at the pleading stage to determine whether the Section 502(a)(1)(B) claim provides adequate relief for Plaintiffs' alleged injuries. In fact, this determination is not even practically possible at the pleading stage because on the merits, the Court could find that Defendants are liable to Plaintiffs under both, either, or neither of the two causes of action. As the court in *Christine S.* put it:

> Here, for example, the court could rule on the merits that Defendants correctly denied benefits to Plaintiffs under the terms of the Plan, which would require denying recovery under Section 502(a)(1)(B). But consistent with that ruling, the court could still find that the terms of the Plan on their face or as-applied by the insurer violate the Parity Act by imposing unequal criteria or standards to mental health treatment, which would require granting equitable relief to the Plaintiffs under Section 502(a)(3). The inverse is also true: the court could find that Defendants wrongfully denied Plaintiffs' benefits based on the terms of the Plan, but deny the Parity Act claim by finding that Defendants do not apply unequal criteria to mental health benefits. The court could also find that Defendants violated Plaintiffs' rights under both theories, or under neither.[102]

To this point, the Court also notes that in the *Varity* and *Amara* cases, a determination regarding whether the plaintiffs' Section 502(a)(1)(B) remedy was adequate was made only after a trial had taken place. In this way, the cases speak more to a prevention of duplicative *relief* than to *pleading* multiple theories. As the Eighth Circuit has recognized, "'*Varity Corp.* does not hold that when an ERISA plaintiff alleges facts

---

[101] *Id.* at 699 (quoting *Varity*, 516 U.S. at 490) (other internal citations omitted). *See also Silva,* 762 F.3d at 727 ("At the motion to dismiss stage, however, it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative, and determine if one or both could provide adequate relief" … "At the pleading stage, it is difficult to determine if relief is indeed owed under § 1132(a)(1)(B), and requiring the plaintiff to pursue that path may foreclose the plaintiff from bringing a better case pursuant to § 1132(a)(3).").
[102] *Christine S.*, 428 F. Supp. 3d at 1233.

supporting both a § 1132(a)(1)(B) and a § 1132(a)(3) claim, a court must or should grant a defendant's Rule 12(b)(6) motion to dismiss the latter claim. *Varity Corp.* did not deal with pleading but rather with relief[.]'"[103] The Eighth Circuit went on to explain its view of *Amara* as follows: "The Court [in *Amara*] addressed the issue in terms of available relief and did not say that plaintiffs would be barred from initially bringing a claim under the § 1132(a)(3) catchall provision simply because they had already brought a claim under the more specific portion of the statute, § 1132(a)(1)(B)."[104]

Defendants additionally rely on *Swenson v. United of Omaha Life Ins. Co.*,[105] where the Fifth Circuit upheld the district court's dismissal of the plaintiff's Section 502(a)(3) claims for equitable relief, only allowing the Section 502(a)(1)(B) claim to go forward. The court stated: "Because ERISA's civil enforcement provision provides a direct mechanism to address the injury for which Swenson seeks equitable relief, she cannot assert a separate ERISA claim for breach of fiduciary duty." [106] However, in that case, the claim for equitable relief under Section 502(a)(3) did not assert a Parity Act violation.[107] The district court found that, whether under Section 502(a)(1)(B) or Section 502(a)(3), the "Plaintiff's fundamental claim in this case is that she was wrongfully denied life insurance

---

[103] *Silva*, 762 F.3d at 726 (quoting *Black v. Long Term Disability Insurance*, 373 F.Supp.2d 897, 902–03 (E.D. Wis. 2005) (internal citations omitted)).
[104] *Id.* at 727.
[105] 876 F.3d 809 (5th Cir. 2017).
[106] *Id.* at 812 (citing *Tolson v. Avondale Indus.*, Inc., 141 F.3d 604, 610 (5th Cir. 1998)).
[107] The Court also notes Defendants' citation of *Tolson v. Avondale Industries, Inc.*, 141 F.3d 604, 610 (5th Cir. 1998), where the Fifth Circuit found that "[b]ecause Tolson has adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section 1132(a)(1), relief through the application of Section 1132(a)(3) would be inappropriate." For the same reasons as given with respect to *Swenson*, the Court does not read the *Tolson* decision to dictate a different result here; in both cases, the court found that the plaintiffs' overall action, including the "breach of fiduciary duty" claims brought under Section 502(a)(3), only entailed allegations of improper denial of benefits. Neither case involved the situation presented here, where Plaintiffs seek particularized non-monetary relief for violations of the Parity Act.

benefits."[108] By contrast, in this case, Plaintiffs' Section 502(a)(3) claim specifically addresses a separate problem (namely, Defendants' alleged violations of the Parity Act) and seeks equitable remedies which Section 502(a)(1)(B) simply does not provide.[109]

Defendants further rely on a district court case within the Fifth Circuit where an MHPAEA claim brought under Section 502(a)(3) was dismissed as duplicative of a Section 502(a)(1)(B) claim. In *William J. v. BlueCross BlueShield of Texas*, the plaintiffs sought recovery of benefits under Section 502(a)(1)(B) as well as equitable remedies including reformation of plan terms, injunctive relief, and surcharge under Section 502(a)(3) for alleged MHPAEA violations.[110] The Texas district court found the MHPAEA claims duplicative, reasoning that,

> [w]hichever way the plaintiffs frame their allegations, whether as a breach of fiduciary duty, breach of contract, failing to properly administer benefits, applying exclusion criteria that the plan does not contain, or applying more restrictive standards to JJ's treatment than for other forms of treatment, all of the plaintiffs' allegations boil down to one issue: whether the defendants improperly denied covering JJ's treatment and withheld benefits from the plaintiffs.[111]

For this reason, the court found that "section 1132(a)(1)(B) provides the plaintiffs with an adequate avenue for the remedies that they seek through section 1132(a)(3)."[112]

The Court respectfully disagrees with the conclusion in *William J.* Absent from that decision is a discussion of why the recovery of benefits under Section 502(a)(1)(B) alone provides an adequate remedy for the plaintiffs' Section 502(a)(3) claim which includes a

---

[108] *Swenson v. Eldorado Casino Shreveport Joint Venture*, No. 15-CV-2042, 2017 WL 1334307, at *6 (W.D. La. Apr. 7, 2017).
[109] *See Amara*, 563 U.S. 421, 435–436 (explaining that Section 502(a)(1)(B) does not provide for alteration of plan terms).
[110] *William J. v. BlueCross BlueShield of Texas*, No. 3:22-CV-1919-G, 2023 WL 3635640, at *2–3 (N.D. Tex. May 24, 2023).
[111] *Id.* at *8.
[112] *Id.* at *9.

request for reformation of the terms of a plan which was allegedly noncompliant with the dictates of the Parity Act.[113] As the Supreme Court found in *Amara*, a plaintiff cannot pursue reformation of plan terms under Section 502(a)(1)(B).[114] It follows that recovery of benefits under Section 502(a)(1)(B) does not necessarily provide adequate relief when a plaintiff also alleges Parity Act violations and seeks to force a defendant to comply. And, again, the Court finds that it is too early at the pleading stage to make this kind of determination.

### iii.    Defendants' Additional Arguments

Defendants also suggest that there are two required elements of a claim for reformation of plan terms: "for reformation to be available, (1) the terms of the disputed contract must be the source of the injury and (2) they must show that the only way they could receive benefits would be to change the terms of the plan."[115] Defendants only cite a North Carolina district court case, *L.L. v. Medcost Benefit Servs.*,[116] for this proposition. However, the Court finds that *L.L.* is distinguishable, and the case does not purport to lay out the elements of a reformation claim. The court in *L.L.* specifically noted that "the Plaintiffs here have failed to identify *what* equitable relief they seek and whether such relief is unavailable under § 1132(a)(1)(B)."[117] Because the plaintiffs in *L.L.* did not specify an injury distinct from the defendants' denial of benefits, nor a remedy distinct from the payment of those benefits, the court found the plaintiffs' equitable claims duplicative of the Section 502(a)(1)(B) claim:

---

[113] As discussed in detail, the Court also finds that this is a separate and distinct injury from the denial of benefits.

[114] *Amara*, 563 U.S. 421, 435–436.

[115] Rec. Doc. 32, p. 4.

[116] No. 1:21-CV-00265-MR, 2023 WL 4375663 (W.D.N.C. July 5, 2023).

[117] *Id.* at *3.

> The MHPAEA claim asserted by the Plaintiffs is not an equitable claim for reformation as found in *Christine S*. The relief the Plaintiffs seek would not require reformation of the plan or any other conceivable equitable remedy because, they maintain, the benefits they were denied were due under the plan's terms as written. Thus, no relief sought by the Plaintiffs is unavailable under § 1132(a)(1)(B) and their second cause of action is impermissibly duplicative.[118]

Accordingly, the situation in the *L.L.* case is distinguishable from the present one because here, as in *Christine S.*, Plaintiffs specifically seek reformation of the plan's terms on the MHPAEA claim. Thus, it is plainly not the case here that "no relief sought by the Plaintiffs is unavailable under § 1132(a)(1)(B),"[119] as the court stated in *L.L.*

Moreover, the second requirement suggested by Defendants, requiring Plaintiffs to "show that the only way they could receive benefits would be to change the terms of the plan,"[120] incorrectly implies that recovery of benefits is the single underlying item of relief that Plaintiffs seek. The same can be said about Defendants' statement that Plaintiffs failed to "point to any Plan term that would need to be changed for them to be awarded benefits here."[121] As discussed in detail above, Plaintiffs' request for reformation is a distinct remedy in itself, and Plaintiffs purport to use that remedy to address a distinct injury by bringing the terms of the Plan into compliance with the Parity Act.

For all of these reasons, the Court finds that Plaintiffs' simultaneous pleading of claims under Section 502(a)(1)(B) and Section 502(a)(3) is permissible. If Plaintiffs

---

[118] *Id*. at *4.
[119] *Id*.
[120] Rec. Doc. 32, p. 4.
[121] *Id*.

ultimately succeed on both claims, then Plaintiffs' "*remedy* is limited to such equitable relief as is considered appropriate."[122]

## III.    CONCLUSION

For the reasons set forth above, the *Motion to Dismiss the Second Cause of Action in Plaintiffs' Amended Complaint*[123] filed by Defendants, Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA") and New Directions Behavioral Health, LLC ("New Directions") is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 30th day of _____August_____, 2024.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[122] *New York State Psychiatric Ass'n, Inc.*, 798 F.3d at 134 (quoting *Devlin,* 274 F.3d at 89) (emphasis in original).
[123] Rec. Doc. 29.